The next case on our calendar is United States of America v. Evan Griebel. Good morning. Good morning, Judge Buller. May it please the court, Canon Chan-Miyam of Paul Weiss for the appellant, Evan Griebel. In this case, the government prosecuted Evan Griebel, a partner in one of the nation's leading law firms, for conspiracy to commit wire fraud and securities fraud based on his advice as a lawyer for a corporate client. This prosecution was unprecedented. In its brief, the government cites not a single case involving the prosecution of a lawyer, let alone in similar circumstances. And the government's theories of prosecution on both counts were extraordinarily aggressive. On each count, the government sought and obtained overbroad and unclear instructions that permitted the jury to convict Mr. Griebel for conduct that was not a crime. On the wire fraud count, the district court misstated the relevant duty of disclosure that a lawyer owes to an organizational client, overstating the scope of that duty and failing to state to whom the duty was owed. And on the securities fraud count, the district court gave a misleading instruction on the definition of market manipulation. Can you go back to the first point? Try to explain to me how he was prejudiced by the description of the duty of the attorney counseling a board of directors. Sure. He was prejudiced, Judge Pooler, in two respects. The track, the two flaws in the instruction that we identified in our letter brief below. The first, and I think the most fundamental one, is that the instruction simply said nothing about to whom the duty was owed. And that allowed the government essentially to conflate Retrophin and the board of directors and to argue repeatedly, as the government did at closing, that the duty of disclosure ran directly to the board of directors. And that flaw was exacerbated by the language in the instruction. But if Screlly is part of the conspiracy, isn't that essentially what would need to be done? You can't disclose it to Screlly if he's a co-conspirator. That's not sufficient disclosure, right? Well, in our view, Judge Bianco, relying on the relevant sources that define an attorney's duty to an organizational client, there is a threshold determination that has to be made before there is a duty of disclosure to the board. And that is the requirement, in the words of the restatement and the relevant New York rule, that a lawyer has a duty to beyond disclosure to a corporate agent, here Mr. Screlly, only if he believes that an officer had acted in a way that violated a legal obligation to the organization and that the violation was likely to cause substantial injury. Just going back to Judge Pooler's question, then, if we believe that there was substantial evidence that Mr. Screlly was involved in this fraud, how could that disclosure have been sufficient? Well, Judge Bianco, let me quibble and then address that directly. My quibble is that that is not the standard. If you believe that the instruction is deficient, the question is whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error. And I would respectfully submit that the Court cannot have confidence about that, given that Mr. Grebel's defense was that these settlements were appropriate to resolve an existing legal liability that Ratrophin had. But to engage directly, though, on the substance of the record here, I think that the flaw here with the absence of any language addressing the duty, a duty that I don't read the government to be disputing, was exacerbated by the fact that the instruction required a disclosure of all material facts. And the government certainly exploited that because there was no dispute on this record that the Board of Directors itself was generally aware of the fact that there were these settlements, these settlement agreements that resolved potential liability. What the government argued, and it argued this at least 10 times in closing, was that those disclosures did not go far enough that there should have been more disclosures, not just of some of the agreements, but of all of the agreements, and of the details of those agreements. What about the affirmative misrepresentations that the government points to, that your client created sham consulting agreements in order to disguise, once it became clear that the project, he converted them into consulting agreements. There you have an email. I read the email myself, where your client says, when Mr. Shkreli says, why can't we do this as a settlement agreement? He says, no, we can't do it that way. And both Mr. Gellar and Mr. Blanton testified that they weren't doing any consulting. It was a sham. There was no evidence, Judge Bianco, that at the time of these consulting agreements, Mr. Grebel thought that any of these individuals were not going to perform. But more generally, to directly- What about that email? The email, there's an exact discussion of how these should be characterized, and your client says, no, we can't do them as a settlement agreement. In order to avoid, I don't remember the exact wording, we have to do it as a consulting agreement. So isn't that evidence that your client knew? I don't think so. I think it was just evidence that Mr. Grebel thought that if there was further consideration provided, not just the release of claims, but the performance of services, that that might be better. I mean, not least for accounting purposes. But again, Judge Bianco- Let me ask you this. What evidence is there in the record that your client had any belief that they were actually going to provide consulting services? Where is that? Well, I would just point to the fact that there was the absence of any evidence that at the time, he thought that this was a sham, that they were not going to perform, which is, of course, the government's burden. But Judge Bianco, to sort of back away from that, I don't think that the government can sustain the conviction on count seven now based on an affirmative misrepresentation theory, precisely because if you agree with me that the instruction was deficient, assuming, of course, that you do agree with me, then I don't think that the government can rely on an alternative theory of conviction on this count under this court's case law, which makes clear that if it is not clear which theory the government convicted on and if the jury was not properly instructed on one of those theories, the conviction cannot stand and there has to be a new trial. And I would respectfully submit that this case was tried first and foremost primarily on an omissions theory. And again, we point to the ten places in closing alone where the government made the argument that Mr. Grebel had a duty to disclose all material facts and that in the government's own words, that was the defendant's duty and you know that he violated it. And that is why this case is of such great interest, frankly, to the legal community here. And of course, you will be very aware of the fact that Mr. Grebel's prosecution, like Mr. Scully's prosecution, has gotten a lot of attention. It is because this is not just an unusual prosecution of a lawyer. It's a prosecution of a lawyer based on an omissions theory that defines the duty of disclosure more stringently than the applicable ethical rules. That is the oddity of this case and the problem going forward, that if this court sustains an instruction that permits a duty of disclosure to be imposed on lawyers to a corporate board that is actually a lower bar than the duty under what is seemingly indisputably the applicable rules governing attorney conduct. Attorneys can be prosecuted for wire fraud for failing to go beyond a corporate agent to the corporate board. I don't know that I necessarily agree with you that the duty to disclose here was broader even under the ethical rules and under the standard governing conduct of lawyers. If you have to disclose material information to your client, right? I understand the issue about the client. Identifying the client is different, but the issue of what you need to disclose, I don't understand exactly. You have to keep the client reasonably informed. I would respectfully submit that this case illustrates the gap between those standards. The government certainly focused on the all and all material facts when it was arguing this to the jury. Reasonably informed duty to disclose all material facts, isn't that by definition what reasonably informed means? I think that the difference here is between keeping the board generally informed of the fact that these settlements were occurring and Mr. Grebel himself precipitated disclosures to the board about these agreements. So the government certainly cannot argue that there weren't at least some disclosures, nor did the government argue that to the jury. But leaving that aside, Judge Bianco, I would turn to the second part of this, and I don't think that there is any dispute about the role of lawyers in the ordinary context with regard to organizational clients. Because if you look at the government's brief, the government does not join issue with our characterization of Section 96 of the Restatement or Rule 1.13, the New York rule which sets out the general principle that ordinarily it is sufficient to go to a corporate agent and there are only limited circumstances where you need to go beyond that agent, and that was precisely the objection that was made in the lengthy letter brief that counsel submitted to Judge Matsumoto and that Judge Matsumoto rejected. And so again, if there is just a—oh, sorry, go ahead. Disclosing to the one principal who was a partner in the fraud, who was the perpetrator of the fraud, doesn't meet that responsibility. Well, the government suggests that merely because it was alleged that there was a conspiracy that you can go beyond—you can eliminate that distinction for the jury, and that was indeed the argument that the government made to the jury. But our whole submission here, Judge Pooler, is that there is a threshold determination as a matter of law that has to be made before there is a disclosure obligation to the board or someone else within the company, and that is the determination both that the corporate violation was likely to cause substantial injury, and of course, Mr. Griebel's whole argument was that these settlements were in the best interest of Rotrofen because Rotrofen was potentially exposed to liability as these MSMB investors were threatening. And so that is a hugely important issue that was taken away from the jury by the district court's instructions. And so— Why didn't you call an expert—you had Mr. Geller, I guess, available to try to educate the jury on some of these issues that a lawyer faces in deciding whether or not something is material and who it needs to be disclosed to? Why wouldn't that be the better course of dealing with this type of issue? Well, because I think what the government is essentially attempting to do in suggesting that is to convert an instructional error into an issue of fact, and the jury simply had no ability to make the threshold determination that I was just suggesting. Let me give you an example. As a district court judge, I've had cases involving doctors as to whether or not they prescribe drugs for a legitimate medical purpose or not. I don't give them a lengthy instruction on what a legitimate medical purpose is. They offer experts that describe a doctor's discretion and how they have to make decisions about whether or not to prescribe drugs or not. To me, that's analogous to this type of situation, isn't it? Judge Bianco, I don't think it's quite analogous for this reason. As Your Honor is aware, in the context of an omissions case, you have to have a duty of disclosure, a fiduciary duty. And the way that that works for purposes of mail or wire fraud is that you often do look to state law to determine the existence and the scope of the duty. This court routinely does that, for instance, in the context of broker-dealers. And so, you know, an instruction was given here. An instruction was given on the duty of disclosure. It was simply a generic instruction based on the restatement of agency that took no heed of the special way in which these relationships operate for lawyers who are representing organizational clients. And again, I don't think that this court can have confidence in the verdict here that if the jury had been instructed, as we suggest, that the outcome would have been the same. And that is because of the way that the government argued this case at closing. Again, the government argued that the duty of disclosure ran to the board and that the disclosures were insufficient. In the words of my friend, Ms. Smith, at closing, the government acknowledged that there had been some presentation to the board, but she said, quote, they don't want them to fully understand it. This is at page 2867. And so, again, the way that this case was argued to the jury permitted — it was argued to the jury by the trial counsel that — it was argued to the jury that he disclosed this discreetly and that he didn't deceive anybody. If the jury believed that, but for this issue you're describing about the instruction, why wouldn't a good faith defense have kicked in at that point? It would have been a subjective belief by your client that this was sufficient, and the jury would have found in your favor on good faith. I mean, I don't think so, because to the extent that the jury was instructed on state of mind, those instructions were tied to the definition of fraud. Those instructions, you know, talked about whether Mr. Griebel and another person conspired with the intent to commit each element of wire fraud. This is at page 45 of the special appendix. And then that one element of wire fraud is an intent to defraud. And, of course, the instruction on the duty of disclosure goes to the definition of fraud itself. And so, you know, I think — I do not think that this can be sustained simply on the basis of the fact that the evidence might seem to be sufficient on the state of mind element. It's a quite odd way to approach an instructional — You instructed the jury, however misleading or deceptive a plan may be, it is not fraudulent if it was devised or carried out in good faith. An honest belief in the truth of the representations made by the defendant is a complete defense, however inaccurate the statements may turn out to be. You're saying that wouldn't — the jury wouldn't understand that to cover what you're suggesting here? I mean, I'm not sure that it would cover this precise showing, which is, again, in the words of the restatement, whether Mr. Griebel believed that Mr. Scully had acted in a way that violated a legal obligation to the organization and that the violation was likely to cause substantial injury. And so, again, if Mr. Griebel believed that these settlements were in the best interest of a retrophin, he could very well have not had a — the jury could very well have found that there was no further obligation to go to the board. And again, you know, this is a somewhat artificial discussion because Mr. Griebel did precipitate disclosures to the board. He precipitated — he made disclosures to Mark Panoff, who was the chief financial officer of the company. And the government, time and again in its brief, tries to convert this into a referendum on the sufficiency of the evidence. That is quite simply not how harmless error review operates with regard to instructional errors. And I think it's telling that the government spends so little time defending this error on the merits. I would love to know if the government's argument is, in fact, that we're wrong as a matter of law as to an attorney's duty of disclosure in the context of an organizational client. Because if that really is true, then I think, Judge Bianco, the government really is arguing for a lower standard under criminal wire fraud than is the applicable standard under the ethical rules, the familiar standard that governs attorney conduct. And there's really, I think, no dispute about that standard. It isn't as if New York has a dramatically different rule from California or Texas or any other jurisdiction. These principles are generally applicable principles that I think are really second nature to corporate lawyers. But yet, if wire and mail fraud liability is going to be available, it is going to really disrupt the attorney-client relationship, as the brief of Aramiki, I think, well sets out. So I do want to say a word about Count 8 because it is, in our view, equally important. And I think that the error here is equally significant in terms of its practical consequences. In our view, what the district court did incorrectly here was simply to give a misleading instruction on the definition of market manipulation. And that is because the district court failed to include language from this court's decision in ATSI on which it was relying, making clear that for market manipulation to occur, there has to be market activity that sends a false pricing signal to the market. Now why is that significant here? It's significant because the government really pointed to four categories of conduct to support its claim of market manipulation. And in our view, really three of those categories of conduct, and I think unambiguously at least two of those categories of conduct, did not involve market activity at all, much less market activity that sends a false pricing signal to the market. The instruction that the district court gave, however, with the language concerning natural interplay of supply and demand, could easily have led the jury to conclude that any activity affecting the market price of a security could rise to the level of market manipulation. It had to include a fraudulent representation as well as market manipulation. I don't think that that's quite right. I think that the language in question Judge Puhler spoke... You have it right here. Go on. Well, I'm happy to be corrected. It won't be the first time. But I think that the sentence in question is the sentence from page 69 to 70, which says, quote, an essential element of manipulation of securities is the deception of investors into believing that the prices at which they purchase and sell securities are determined by the natural interplay of supply and demand. Now why is that problematic? I think it's problematic because it permitted the jury to find that certain practices such as merely holding shares were deceptive because investors were unaware of the fact that, for instance, the Fear Now shareholders were holding shares rather than selling them merely in order to maintain the share price. And as we point out, that has never been held by this court or any other court of which I'm aware to be sufficient as a matter of law to constitute market manipulation. Of course, investors hold shares all the time. So too with regard to the argument concerning the allocation of the Fear Now shares to friendly investors. After all, what we're talking about here is market inactivity. And we're certainly not talking about activity that sends a false pricing signal to the market. And the reason why this is... And so I would say first, once again, I don't hear the government to be disputing this court's standard in ATSI that you have to have market activity that sends a false pricing signal to the market in order to have market manipulation. At most, I think the government argues correctly that you don't necessarily have to have trading activity. But I don't think that this court or, again, any other of which I'm aware has gone so far as to say that complete inactivity qualifies. And second, that is precisely the argument, once again, that the government made to the jury. The government argued to the jury that merely holding shares is sufficient. In the words of the government at rebuttal, if you want the price to stay stable, you either hold or buy. They held. This is a... The trial counsel asked for this particular language to be put in there. I thought there was just a reference to it being confusing, but I didn't see any particular  I think that's fair, Judge Bianco, but I don't think that this court's cases require it. I think the only question is, was the gravamen of the objection made clear? And I think that it was in the language to which you alluded. This is pages 2715 and 2716 of the appendix. And the defense objected on the grounds that this instruction was misleading as proposed because it, quote, reads as if any desire to control the price of the stock is per se improper. That it is uncontested in the words of defense counsel that people can agree not to sell securities. And that is, of course, the reason why this additional language should have been included. And again, I don't hear the government... They cite Royer. They cite the Royer case and say that language wasn't in Royer. What's your response to that? My response to that is first that Royer contained additional language saying that group trading does not necessarily constitute market manipulation. The intent to deceive was also a requirement here. Yeah, that's true. But it did go further and specify at least an example of some conduct that while coordinated would not qualify. And critically, the objection that was being raised in Royer by the appealing defendants, I think it was a criminal case, was that you have to have false representations for there to be market manipulation. And the court correctly rejected that as a statement of law. So I think the mere fact that that was the instruction that happened to be given in a case where this court affirmed really doesn't get the government very far. And again, if the government doesn't dispute that we're correct as a matter of law that you have to have market activity that sends a false pricing signal, and that is a standard that the SEC itself has embraced, then I think it's hard for the government to argue that this instruction was not incomplete. It's hard to know how lay jurors, who obviously don't see securities fraud cases as often as you do or as we do, would react to an instruction like this that simply talks about the natural interplay of supply and demand without being provided some degree of additional guidance. And that was the point of, I believe, Mr. Chan's objection in that colloquy that we were just discussing. And I think the district court well understood that. But the district court simply said, the language I'm giving is language that was taken from a Second Circuit opinion. And that is certainly true. But the problem is that she didn't keep going and include the additional language on which we rely. And again, I think the reason why this is significant is because it does seem to reflect an overbroad view of what constitutes market manipulation as a matter of law. And I think— —to stop? —OK, I will. Of course, the last thing I will say is that we do also have our argument about the exclusion of Dean Ferullo, which goes precisely to this point about whether the reasonable allocation of shares could constitute market manipulation. He would have testified that that was a common practice. I'll take my cue and reserve my time for rebuttal. Thank you. We have from the government. Good morning, and may it please the Court. I'm Assistant United States Attorney Alexandra Smith, and I represent the government on appeal. I also represented the government before the district court. I will address my adversary's points on the duty to disclose and the market manipulation instruction. But before I begin, I kind of want to take a step back and look at the big picture. My adversary and amici contend in sum that this was a case about a well-meaning attorney who was a counsel for a small company that was, unbeknownst by him, run by an unscrupulous CEO. And they claim that despite acting diligently and in the best interests of the company, he somehow finds himself a convicted criminal. That characterization couldn't be farther than the record in this case. What the overwhelming evidence established after 11 weeks of trial, dozens of witnesses, and thousands of exhibits was that the defendant was a knowing and significant participant in two complex fraud schemes that spanned a period of years. In fact, it was his very role as the company's trusted attorney that allowed Grebel and Screlly to perpetrate these frauds. For example, in the first fraud scheme, there was a number of mentions by my adversary about this idea that Grebel, in fact, precipitated disclosures to the board. Nothing could be further from the truth. The settlement agreements were discovered by the auditors, at which point Mr. Grebel drafted a control memo that contained numerous affirmative misrepresentations about those agreements. And then, as Judge Bianco pointed out, there was a switch to consulting agreements after that point. In addition to the email that Judge Bianco talked about, there's also a footnote in our where there's a discussion about one of the consultants, fake consultants, and whether the shares for that consulting agreement would have to come from the company, and in which case Grebel was the one who suggested using a consulting agreement to have that happen. So he is, in both fraud schemes, front and center in the fraud itself. Turning specifically to the duty to disclose instruction, I want to start with the good faith instruction that Judge Bianco raised, and just point out that there was, in addition to a discussion of good faith within the fraud charge, there was also a good faith defense listed at the end of the jury instructions, it's at page A-3099, which says that a good faith is a complete defense to all of the charges in the case, and it includes that if you believed that Mr. Grebel was acting in good faith and acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime. And obviously on appeal, the jury instructions... He argued good faith at trial? Was that his defense? He did argue good faith among other arguments, including, for example, that the disclosures were in fact sufficient. But good faith was argued, and we have to assume that the jury read the instructions as a whole, and as a result, all of these sort of hypothetical arguments that are now being raised on appeal about the jury being confused about whether or not Mr. Grebel believed that he was acting properly, they would have read those instructions as a whole, and they would have found that he had acted in good faith and not convicted, even on the instructions that are in front of us now, on the theories that defense counsel's raising. Proposing counsel focused on the identity of the client instruction, and he said he would like to know whether the government's position that what they're proposing is wrong as a matter of law, or I guess unnecessary, what is the government's position as to their proposed instruction with respect to who the client is vis-a-vis an organization when you're a lawyer? So before the district court, Grebel never requested instruction on who the client was. The letter that my adversary points to was actually a letter that was put in with a request for there to be no duty to disclose instruction. That's the end of the letter that specifically requests the duty to disclose instruction be removed. And so, with respect to whom disclosure is owed, there was a proposal made that basically that an attorney for an entity has the right to determine to whom the disclosure should be owed, which is not what they're asking for on appeal. It was silence on who the client was, wasn't it? Yes, it was. And the charge is accurate as written. There's no basis in law to suggest that the charge needed to be specific as to whom at the client disclosure is made. So the charge is accurate as written. And there's no explanation. The aspect of the charge that says all material facts known to the attorney need to be disclosed, that's accurate? Yes. The material facts language was in fact suggested by Griebel's counsel in the district court, and so our position is that objection was unpreserved and subject to plain error review. But it is in fact accurate. The reasonably informed language that Mr. Griebel now asks for, which again was not proposed below, is virtually indistinguishable from the material facts language that the court in fact used. There's actually an argument that it could be a lower standard because the reasonably informed standard actually only requires that the attorney inform the client of important developments and provide a summary of information on a regular basis, which A, it's hard to see how you could be providing that information and not be providing material information. But B is in one respect broader than providing material information. It's just a summary of information. So our position is, you know, first that this specific objection was not preserved below. In fact, there's an argument that it was waived because counsel suggested the material facts language. But second, that there's no real daylight between the instruction that was given and the instruction that the defense now requests. And finally, even if there was a difference, it's impossible to see how a jury could not have convicted on the standard that is now proposed. Because there's no question that the grieval did not keep his client, which was the company reasonably informed, when he failed to tell them that Screlly had taken millions of dollars and money and shares out of the company to repay defrauded hedge fund investors. I also wanted to just touch briefly on this idea that the case was primarily an omissions theory. On pages 34 to 36 of our brief, we discussed at length the affirmative misreps and affirmative actions taken by Mr. Griebel in furtherance of the fraud. They included drafting this control memo, which contained significant false statements, taking specific actions, such as after the settlement agreements were discovered, he himself facilitated the transfer of shares to defrauded hedge fund investors in violation of the very memo that he wrote without informing anybody. And again, using the consulting agreements after the settlement agreements had been found in order to take additional shares out of the company. And the final point that I just want to make is that, again, in the reply brief there was an argument that the instruction makes it possible for Griebel to be convicted for non-criminal conduct. And again, the jury instructions need to be read as a whole, there's clear instructions on criminal intent, and then there's the good faith defense, which was discussed by defense counsel during closing, and certainly would have covered all of these hypothetical situations that are now being raised on appeal. Do you need to impose a market manipulation charge requiring that there's a fraudulent intent? Yes, both require that. So that, how could there be non-criminal behavior conviction if the jury followed the charge? I agree. For both market manipulation and the duty to disclose instruction, the word fraud or deceit is used in both of them. Turning to market manipulation, as you pointed out, Judge Pooler, the first line of that is, the fraudulent or deceitful conduct alleged need not relate to the investment value of the securities involved in the case. And every sentence includes fraud, deceit, or deception. That is the thrust of the ATSI and the case law. The instructions are not inaccurate. Defense now argues, which they did not argue below, below defense merely asked for certain language to be taken out because they claimed it was just confusing. And now there's an allegation that additional language from ATSI must have been included. This language about market activity plus some additional signal about the price. And so that additional language, again, not raised below, not preserved, subject to plain error. But the thrust of the case law, including ATSI and the Ernst case, which Judge Matsumoto also referred to when she was drafting the instructions, are really just this idea that manipulation has to involve fraud and deceit. And again, in every sentence of the market manipulation instruction, the words fraud and deceit are included. And as the court pointed out, nearly identical language was upheld in Royer and the additional language about group trading in Royer included, again, that language about fraud and deceit in that example. Even if it was erroneous, and again, we believe the plain error standard applies, any rational jury would have convicted even under the additional language that Griebel was asking for here. And that is because it is clear that there was market activity plus here. The characterization by the defense that this was merely a theory that stock was held and not traded, and that's the entirety of the market manipulation fraud is incorrect. The fraud as a whole, in short, was to distribute shares to friendly shareholders or shareholders that ultimately Screlley controlled, and that distribution was not disclosed. And after that distribution happened, Griebel actually drafted an SEC disclosure of Form 13D that informed the market that Screlley did not control the majority of the shares, when in fact he did control 95% of the free trading shares. That is a disclosure that is never mentioned in the defense's opening brief, and there's one sentence on it in the reply brief. It's a really, really significant affirmative misrepresentation that Griebel made to the market about how the shares were distributed among principal shareholders, and basically told the market that Screlley did not have control over the majority of the shares, when in fact that he did. I expect that the defense may say that Griebel drafted it, and it was in fact filed by Screlley, but there are a number of draft emails where you can see that the 13D comes from Mr. Griebel, is shown to Mr. Screlley, and then is filed. And it very clearly says that Mr. Screlley does not control the majority of the shares, when in fact all of the evidence at trial did. The market activity at that point was once the shares had been distributed to those shareholders, again, not disclosed to the public that Screlley in fact controlled those shareholders, there were a decision made not to trade at certain points, because they controlled 95% of the free trading shares, and when you control that significant portion of the free trading shares, if you do not trade, then those shares do not become available to the public. And you can control, because you have a much smaller float, you can control the price much more easily. And the experts that testified at trial, both the defense expert and the government expert said that one way, especially with a thinly traded stock, with very little free trading stock, to control the price easily would be to hold. And so it's not merely that a bunch of disinterested shareholders made a decision on their own based on the value of the company or how they felt their investment would work out not to deliberate plan to distribute the shares, to hide from the market who actually controlled those shares, and then to use those shares, given how thinly traded it was at the time, to ensure that they couldn't enter the market. So in addition to not trading, for example, there was also an agreement to make those shares unshortable, which meant that they were unavailable to other people. And there's ample evidence that Grebel was aware of this. We point specifically to the discussion with Mr. Shkreli about Timothy Perotti's shares, and they were able to figure out that he is the person trading because of their understanding that nobody is making their free trading shares available. So for all of those... Was that severed, Mr. Shkreli's, early on? Yes, not so early on, it was severed in April of 2017, right before Mr. Shkreli went to the court. Did the government resist severance? Yes. The main basis for severance was sort of each defendant was pointing at each other. So Mr. Shkreli advanced, in addition to other arguments and advice of counsel defense, and Mr. Grebel said that he would get up at trial and say that Mr. Shkreli perpetrated the fraud all by himself. And they were both convicted separately? They were both convicted separately. Mr. Shkreli was not convicted on count seven, which is count one in this case, but he was convicted on a number of the other counts. They were both convicted on count eight. I know that my adversary mentions in his reply brief the fact that Mr. Shkreli was not convicted on count seven, which is count one here, as a reason why the duty to disclose instruction might be considered confusing. Isn't that the conspiracy count? It's the conspiracy count number one. How can Mr. Grebel be convicted if Mr. Shkreli was not? So they're two separate trials. This was something... He had the conspiracy. A conspiracy. Who was he conspiring with? So there was another co-conspirator that the court found, which was Mark Panoff. If you have two separate trials and they're not tried together, then you can have co-conspirators convicted at two separate trials. In addition, I will point out that the trials had significantly different evidence. Mr. Shkreli's trial was six weeks. This trial was 11 weeks, included multiple additional witnesses, including a robust defense case at which a number of Mr. Grebel's colleagues testified, and one of whom testified that Mr. Grebel lied to him on a number of occasions. That's Mr. Rosensaft. That's in our brief. And the other two captain attorneys also made clear that they were not aware of Mr. Grebel's So that's a significant difference between the two. Thank you. We'll hear from Mr. Grebel in a few minutes. Thank you, Judge Piller. It is telling that my friend, Ms. Smith, started with the sufficiency of the evidence, yet when she was asked the critical question on count seven by Judge Bianco, does the government agree that the duty of disclosure in the context of a corporate client is what we submitted? She said simply that the instruction was accurate as far as it goes. The government seemingly accepts the premise now that it is okay in a wire or mail fraud prosecution for the standard to be lower than the standard that is a familiar one to attorneys in the practice of law. That should deeply trouble the court. Most of Ms. Smith's argument on count seven was devoted to waiver and to harmless error. On waiver, she says at one point that the defense accepted the all-material fact standard. That is a drive-by waiver argument. There was one reference at page 2600 of the appendix to the all-material fact standard after the district court had seemingly rejected the submission in our letter brief and in the context of a discreet argument to limit the scope of the instruction by requiring it to be facts that were at least known to the lawyer. So that argument really doesn't carry any water, I would respectfully submit. And with regard to harmlessness on count seven, I think I would just say two things. It's always very hard to respond to the government's arguments on harmlessness after an 11-week trial. But what I would say is that first, the extent that Ms. Smith claims that Mr. Griebel was aware of the fact that Mr. Scully was engaging in fraud, there's simply no evidence to support that proposition. At most, Mr. Griebel was aware of the fact first that there had been losses at the MSMB entities and that there was an ongoing SEC investigation. There was certainly no smoking gun evidence that he was aware of fraud. And it is telling that on count seven, the government's primary theory was, again, not a theory of false representations, but a theory of omissions. And to the extent that Ms. Smith attempts to join issue on these consulting agreements, I did not hear her to suggest that Mr. Griebel had any knowledge that these consulting agreements were a sham. And indeed, if you look at pages 5205 to 5206 of the appendix in this case, Mr. Griebel precipitated the disclosure of the very settlement agreement to which my friend Ms. Smith referred, the Geller Agreement. There, he emailed Mr. Panoff and had him add that consulting agreement to the board's agenda. And the board, in fact, reviewed at least two of the very consulting agreements themselves. So again... I found the email that your client wrote. Mr. Scully says, why would we need to call it a consulting agreement? Mr. Scully wants to call it a settlement agreement. Your client emailed back, we can call it a settlement agreement, but given Markham's recent behavior, they may require it to be disclosed in the financials. I was trying to prevent that issue. So why isn't that both evidence of knowledge and an intent to defraud? I don't think so, Judge Bianco, because I think that all that it is is evidence on materiality. And as we discussed earlier, if you have a consulting arrangement where consulting services are provided, that is additional consideration. And again, the problem with the instruction on Count 7 is that it did not permit Mr. Griebel to make the argument, not just that these settlements were somehow in good faith, but beyond that, that the settlements did not cause harm to the company, which is what would be required to trigger this duty of disclosure. And I do think that it would be a remarkable proposition for this Court to suggest that an instruction on good faith, a different element of the offense, simply cleanses the error on the substantive conduct that constitutes the predicate offense for the conspiracy. And of course, even that instruction talks about good faith that Mr. Griebel was acting properly, which simply begs the question of what constitutes proper conduct in the first place. I know my time is very short, so I want to say just a word about Count 8 as well. Go on. I will be brief. The Court has been very generous with its time. I think on Count 8, on the substance of the instruction, my friend Ms. Smith, again, equivocates. And I think that that should be also concerning to the Court. I think that the government would certainly love to be operating in a world in which it could pursue claims of market manipulation based on merely holding stock on the theory that if you have an improper intent, that is sufficient. But I would respectfully submit that if market manipulation is turned into an intent-based offense, that would be a very dangerous standard to put into the hands of prosecutors, and neither the Supreme Court nor this Court has ever countenanced that standard. And so, again, I don't hear the government to be claiming that we're wrong as a matter of law. The government's defense, once again, is simply waiver and harmless error. On the issue of waiver, it is certainly true that defense counsel suggested that it would be better to omit the natural interplay language altogether. But again, the key point here is that this Court has never required defense counsel in the heat of trial to propose the exact language that would be required to address an objection. All it has required is that the specific objection be made clear. And I can do no better than to point the Court to the discussion, which took place, to be sure, over two pages of transcript at pages 2715 to 2716, where I think defense counsel identified the very danger that we're identifying here. And on harmlessness, the government, in its brief, argued only plain error. It did not argue harmlessness, and I think that that was for good reason, because the But I would point the Court to pages 156, 2875, and 3391 of the record, which makes clear that the government was relying on four separate categories of conduct to support its claim of market manipulation. This instructional error goes to three of them, and to the extent that Ms. Smith attempts to rely on the fourth theory, the theory of affirmative misstatements, I think it is very likely that the jury relied on that theory in light of the evidence that Mr. Griebel was telling the holders of these Frenel shares that they could trade, however, and to whomever they wanted. But in any event, that is of no moment, because if the Court cannot have confidence that the jury did not rely on the other categories of conduct in finding market manipulation, it has to reverse, because it is not clear beyond a reasonable doubt. And so we respectfully submit that in light of these errors and the exclusion of Dean title to a new trial, and that the Court should vacate the convictions. Thank you. Thank you, both. Very interesting argument.